# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| | } | |
| TIMOTHY D. SHELTON | } | CASE NO. 07-81534-JAC-7 |
| SSN:  XXX-XX-8676 | } | |
| | } | CHAPTER 7 |
| Debtor(s). | } | |
| | | |
| AAFCOR, LLC, | } | A.P. No. 07-80096-JAC-7 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| TIMOTHY SHELTON, FRANK SPIRES, | } | |
| JIM POPE, KENNETH SHELTON, | } | |
| and LAUDERDALE COUNTY | } | |
| TEACHER CREDIT UNION | } | |
| | } | |
| Defendant(s). | } | |


## MEMORANDUM OPINION

This case is before the Court on cross motions for summary judgment filed by defendant,

Kenneth Shelton, and plaintiff, AAFCOR, LLC, and on cross motions for summary judgment filed

by plaintiff and debtor, Timothy Shelton.[1] The Court having reviewed the submissions of the parties

---

[1]

   While the pro-se debtor, Timothy Shelton, did not file a formal motion for summary judgment, the
Court will consider  the letter and motion to strike filed by the debtor on August 13, 2009 wherein the debtor
adopted "all arguments and defenses in all co-defendants motions and answers" as debtor's cross motion for
summary judgment.  Alternatively, the Court finds that a court may enter summary judgment *sua sponte* in
favor of a non-moving party so long as the losing party has adequate opportunity to present evidence on the
issue on which summary judgment is granted. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 329 (1986)("district
courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the
losing party was on notice that she had to come forward with all of her evidence"); *Rowell v. Chase
Manhattan Automotive Fin. Corp. (In re Rowell)*, 359 F. Supp. 2d 645, 647 (W.D. Mich. 2004)(granting
summary judgement sua sponte is appropriate when the evidence before the Court is fully developed, so that

and considered the oral arguments presented by counsel for all parties, hereby finds that for the reasons set forth below, partial summary judgment in favor of Kenneth Shelton is due to be and is GRANTED on the fraud and conspiracy claims asserted by AAFCOR against Kenneth Shelton. By separate order, the Court will set the partnership claims asserted by AAFCOR against Kenneth Shelton for status conference. As to defendant, Timothy Shelton, the Court finds for the reasons set forth below, summary judgment is due to be and is GRANTED in favor of the debtor on all claims asserted by AAFCOR. There being no just cause for delay, pursuant to Fed. R. Civ. P. 54 and Fed. R. Bankr. P. 7054, the COURT hereby certifies this ORDER as FINAL.

## SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c) and Federal Rule of Bankruptcy Procedure 7056, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Gray v. Manklow (In re Optical Tech., Inc.),* 246 F.3d 1332, 1334 (11th Cir. 2001); and *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. A1 Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). Where both parties seek summary judgment, the court must consider each motion independently and apply the applicable standards to each motion to determine whether

the moving party suffers no procedural prejudice).

2

summary judgment is appropriate under either motion. *Smith v. Fendley (In re Allied Sign Co., Inc.)*, 280 B.R. 694 (Bankr. S.D. Ala. 2001).

## **FINDINGS OF FACT**

1.    AAFCOR is comprised of two individuals, Donna Zerbo and David Hirsch, who are sophisticated and experienced in complex financing transactions involving personalty and realty. (*Id.* at 26, 37).

2.    Donna Zerbo has specialized in tax and securities law in New York for over 25 years. (*Id*. at 15-16, 56, 265-67). Ms. Zerbo has an LLM in tax, and is a certified public accountant. (*Id.* at 56, 265-67). Ms. Zerbo has vast experience in real estate transactions, structuring loans secured by real and personal property, providing complex financing, and auditing business financials. (*Id.* at 17-21, 82-83, 258).

3.    For three decades, David Hirsch's main profession has been asset purchasing and restructuring debt for distressed multi-million dollar companies. (Depo. of David Hirsch, pp. 12-21). He has actively invested in such companies, including purchasing the assets of an airline, for the purpose of making them profitable and then reselling them. (*Id.* at 28-36). In prior business dealings, Hirsch always independently verified through his CPA the financial condition and assets of any prospective company to be purchased to ensure that company's representations were accurate. (*Id.* at 34-35). Hirsch is experienced in conducting due diligence and has done so on numerous occasions. (*Id.* at 28-36).

3

4.      Plaintiff, AAFCOR, LLC, is an entity formed for the purpose of interacting with the debtor in this bankruptcy proceeding, Timothy Shelton, and his various water businesses, including Springfield Premium Natural Water, Inc. ("SPNW"). (Depo. of Donna Zerbo, pp. 30-32, 45, 109-10). The debtor engaged AAFCOR to make working capital loans, to provide business advice, and to increase the profitability of his water businesses. The goal was to obtain rural development loans to take out the approximately $6.5 million debt the debtor owed on the debtor's water business. Ultimately, pursuant to two promissory notes AAFCOR loaned in excess of $1.5 million to the debtor using as collateral the debtor's assets. While AAFCOR denies that it is a venture capitalist or vulture investor, it appears that AAFCOR's plan was to eventually take an ownership position in SPNW, a heavily indebted business, which some commentators have referred to as loan-to-own investments. Regardless of how one characterizes AAFCOR, the plaintiff was compromised of highly sophisticated individuals who were well aware of the risk involved in the loans it made to the debtor.

5.      The debtor was sole shareholder and owned one-hundred percent of the stock of SPNW. (Exhibit 5 to the Depo. of Donna Zerbo; Affidavit of Timothy Shelton, ¶ 4). SPNW was in the business of providing water to municipalities and bottling water. (Affidavit of Timothy Shelton, ¶ 4). The debtor also owned a plastic water bottling company called Tennessee Valley Bottling Company, LLC ("TVBC").

6.      Kenneth Shelton, the debtor's brother, owns a forty-acre parcel of property containing an ADEM permitted water well and two metal buildings, and the two adjoining parcels of land, all known in this litigation by the name "Springfield property." (Affidavit of Kenneth Shelton, ¶ 13).

4

The water well, buildings, and all other improvements are located on one, undivided 40 acre parcel of property. (Affidavit of Kenneth Shelton, ¶ 13).[2] The buildings, which are directly adjacent to the well, occupy less than an acre of land on that 40 acre parcel. (Affidavit of Kenneth Shelton, ¶ 4). While the plaintiff, AAFCOR, often refers to the buildings as the Springfield plant property and the ADEM water well as the Springfield well property, both the Springfield office buildings and the well are located on the same 40 acre parcel of land used by the debtor in operating SPNW.

      7.      Kenneth Shelton purchased the Springfield property from the debtor on August 31, 2000 and properly recorded the deed to the Springfield property at the Lauderdale County, Alabama Probate office on September 1, 2000. (Depo. of David Hirsch, pp. 138, 244-46; Depo. of James Pope, pp. 138-41, 162-64, Affidavit of Kenneth Shelton, ¶ 10, Exhibit 1). Kenneth Shelton's deed to the property is properly recorded and is a matter of public record. (Depo. of Timothy Shelton, pp. 286-87; Affidavit of Kenneth Shelton, ¶¶ 10 and 11; Affidavit of James Pope, ¶ 9). Kenneth Shelton borrowed $470,000.00 from the Federal Land Bank to purchase the Springfield property, and in return granted the Federal Land Bank a mortgage on both the Springfield property and a separate 60 acres of land that he owned.[3] The debtor did not receive any actual sale proceeds from the transfer, other than the satisfaction of his loan to First Southern Bank which was threatening foreclosure prior to the sale. There have been no subsequent transfers of the property.

---

[2]      The 65 acre tract of property containing the ADEM permitted water well and associated with the business assets of SPNW has been consistently referred to throughout this litigation as the Springfield property. The Springfield property is actually comprised of 3 parcels of land sold as one tract. One of these parcels is a 40 acre parcel which contains the ADEM water well and all buildings utilized by the debtor in conducting his water business.

[3]      The Federal Land Bank's mortgage on the Springfield property is also properly recorded in the Lauderdale County public records. (Affidavit of Kenneth Shelton, ¶ 12, Exhibit 2).

8.      AAFCOR alleges that Timothy Shelton presented a written financial statement to plaintiff which debtor signed on April 5, 2006.   AAFCOR alleges that the financial statement is replete with erroneous values reflecting that the debtor was worth in excess of $15 million dollars, and that the statement incorrectly reflects that the debtor owned the Springfield well and plant property.   Although Kenneth Shelton owned the Springfield property, AAFCOR asserts that the debtor held it out as his own.  AAFCOR admits, however, that it learned early on that the Springfield property, at least the well, was owned by Kenneth Shelton.

9.      AAFCOR alleges that Kenneth Shelton, the debtor's brother, was a partner with his brother in the water businesses; that Kenneth defrauded AAFCOR by telling the plaintiff that his brother owned the business property on which the debtor operated SPNW and, thereby, enticed AAFCOR to loan money to the debtor even though Kenneth actually owned the property upon which the debtor's business sat; or that Kenneth fraudulently suppressed the fact that he owned same.  Alternatively, AAFCOR contends that Kenneth Shelton conspired with the other defendants to conceal the true ownership of the business property.

10.      With Kenneth Shelton's consent, SPNW continued to operate on the Springfield property subsequent to the transfer. (Affidavit of Timothy Shelton, ¶ 13).  There was, however, no written lease or other written agreement between Kenneth, the debtor, or SPNW as to the use of the Springfield property.  As it was in the business of supplying water to municipalities and bottling water, SPNW could not operate without water from the water well located on the Springfield property, which was its sole water source.   With the water from the Springfield well, SPNW

6

provided water to the Town of Lexington and TVBC, debtor's water bottling business. SPNW collected revenues of approximately $140,000.00 per year from the Town of Lexington.

11. Immediately, subsequent to the transfer of the Springfield property to Kenneth Shelton, AAFCOR asserts that Timothy and Kenneth executed a contract with the Town of Lexington to provide water to the town in which the parties were represented as "Partners." While counsel for Kenneth Shelton argued at the summary judgment hearing that the contract was merely a draft, AAFCOR asserts that SPNW supplied water to the Town of Lexington under same for more than three years. In 2003, a new contract was negotiated between Timothy Shelton and the Town of Lexington without Kenneth's signature.

12. Subsequent to the Springfield property transfer, AAFCOR asserts that the debtor used revenues generated from the Lexington contract to continue paying the mortgage, taxes, and insurance on the Springfield property which Kenneth owned. The debtor asserts, instead, that he paid rent equivalent to the mortgage payments and tax due on the property for the use of same. (Affidavit of Timothy Shelton, ¶ 13).

13. While AAFCOR admits that Kenneth Shelton was not a co-owner of the debtor's water bottling businesses,[4] the plaintiff contends that the Shelton brothers were partners in the businesses. AAFCOR contends that Kenneth was primarily the "equity" partner and Timothy was

---

[4] (Depo. of David Hirsch, p. 157).

7

primarily the "sweat equity" partner. AAFCOR alleges that Kenneth also contributed in the management and operations of both SPNW and TVBC, and had the power to remove Timothy from the Springfield property and assume full control over the water business. In support of its partnership argument, AAFCOR submits that Kenneth Shelton responded to questioning whether he had the ability to sell water from the Springfield well, that he "could have run him [Timothy] off and done it myself, I guess, but I didn't choose to." (Depo. of Kenneth Shelton, p. 260). AAFCOR alleges that at one point, however, Kenneth Shelton, informed SPNW employees that he was going to take over the general management of the business. AAFCOR also submits the debtor's § 341 testimony where Timothy stated:

> [Kenneth] made it very clear that – made it very clear, that if I could make something work there he didn't have a problem with it. But we saw no need for any agreement, didn't have an agreement and a time or two through this he told me, he said, if you can't make this work, I'll take it over and make it work. And so we absolutely had nothing. We had no agreement whatsoever. (Timothy Shelton, Meeting of Creditors Transcript, pp. 43-45).

14. In further support of its partnership argument, AAFCOR alleges that in August of 2002, Kenneth Shelton, Timothy Shelton, and SPNW filed a motion for temporary injunction to stop drilling at a competing water well, known as the Hammond well, which would have given the Town of Lexington its own water source. (Depo. of Kenneth Shelton, pp. 279-80).

15. AAFCOR also alleges that Kenneth met with Zerbo and Hirsch on numerous occasions to discuss the water businesses. According to AAFCOR, Kenneth Shelton told Donna

Zerbo that so long as his brother owned the Springfield business property, he would provide water to same. Since, Kenneth knew that he, in fact, owned the property, AAFCOR claims that Kenneth is guilty of intentional fraud.

16.     Defendant James Pope ("Pope") is a loan broker for the Federal Rural Development loan program. Timothy Shelton solicited Pope's assistance to obtain rural development loans and refinance his business debts. Pope introduced AAFCOR to the Debtor on March 27, 2006. (Depo. of James Pope, pp. 62-63). The purpose of the meeting was to discuss funding for one of the debtor's business ventures. (*Id.*).

17.     Hirsch attended the March 27, 2006 meeting. (Depo. of David Hirsch, pp. 200-01). Uncontroverted testimony shows that it was disclosed at this initial meeting that the Springfield land and well which was the water source for the debtor's water businesses were owned by the debtor's brother, Kenneth Shelton. (Depo. of Timothy Shelton, p. 122; Depo. of James Pope, p. 177; Affidavit of William York, ¶ 4). At some point before AAFCOR advanced any money to the debtor, Pope provided Hirsch with a partial business plan for the debtor's water business which included some projections, pictures, and part of a business plan summary. At some later point, Hirsch obtained a complete business plan from a bank in Pulaski, Tennessee. One or both of the plans indicated that Timothy Shelton or his company owned the Springfield property. Pope had not seen the completed business plan before AAFCOR filed the subject adversary proceeding. The partial business plan provided by Pope was not relied upon by Hirsch. (Depo. of Hirsch, p. 253).

9

18.     While there is significant dispute as to the origin and creation of the document, AAFCOR also came into possession of a document titled Timothy Shelton's Financial Statement, dated March 31, 2006 and signed by debtor on April 5, 2006. Defendant, Frank Spires, prepared the financial statement for the debtor based on numbers provided to him by Timothy Shelton. Spires did not attempt to verify, audit or certify the statement based on the explicit understanding that the debtor was not to provide the statement to any third parties. This Financial Statement contained an entry of 65 acres of land alleged to be owned by SPNW. Deposition testimony and the plaintiff's pleadings evidence that AAFCOR has consistently referred to the Springfield property as the 65 acre tract of property containing the ADEM permitted water well and associated with the business assets of SPNW.

19.     Plaintiff admits that it was aware prior to advancing any money to the debtor that the property containing SPNW's sole water source (the ADEM approved water well), and the water rights to that water source were owned by Kenneth Shelton and not the debtor. (Depo. of David Hirsch, pp. 106-07, 133-34, 153-54, 220). Nevertheless, AAFCOR advanced funds to the debtor without ordering a title search on the 65 acres. (Depo. of Donna Zerbo, pp. 319-20).

20.     Sometime after coming into possession of the March 31, 2006 Financial Statement, Hirsch performed due diligence, including a search of the property records, accounted for every piece of property listed on Timothy Shelton's financial statement, and verified its ownership. (Depo. of David Hirsch, pp. 98-100, 104). Specifically, Hirsch went to the county courthouse in Florence, Alabama, and obtained copies of the real property land records owned by Timothy Shelton,

10

including the deed transferring the Springfield property from Timothy to Kenneth. Although AAFCOR determined that Kenneth Shelton owned the water well on the Springfield property and was aware that Kenneth owned the 65 acre Springfield property, Hirsch claims that he was unable to determine the true ownership of the property containing the SPNW plant and related acreage. (*Id.* at 104-05, 107). Rather than verifying the true ownership of the property through independent counsel, Hirsch claims that he asked the debtor to verify the location of the property listed in the deed by showing him physically the location of each parcel of land and pointing out the boundaries of each parcel owned by Timothy and each parcel owned by Kenneth. Hirsch admits that Timothy specifically pointed out that Kenneth owned the property on which the spring well is located.

21.    Mr. Hirsch had in his possession the debtor's business and personal tax records, which evidenced that SPNW owned no real estate. (Depo. of Frank Spires, pp. 55-56).

22.    On August 8, 2006, AAFCOR produced a schedule of Timothy Shelton's debt obligations. (Depo. of David Hirsch, pp. 137-38, and Exhibit 3). AAFCOR knew that the Springfield property was owned by Kenneth Shelton prior to producing that debt schedule and noted Kenneth Shelton's ownership on the schedule. (*Id.* at 137). AAFCOR conducted title searches, and identified the land owned by Kenneth Shelton. (*Id.* at 137-38).

23.    Mr. Hirsch admits he conducted title searches, but states he was unable to read the results, and did not ask any other person, including Zerbo, a practicing attorney, or AAFCOR's local counsel, to help him verify the ownership of the real property in question. (Depo. of David Hirsch,

pp. 138, 244-46). Mr. Hirsch had copies of the recorded property deeds evidencing the ownership of the Springfield property. (Depo. of David Hirsch, pp. 138, 244-46; Depo. of James Pope, pp. 138-41, 162-64).

24. Plaintiff's counsel confirmed at the August 17, 2009 hearing on the parties various summary judgment motions that AAFCOR knew at the very least that Kenneth Shelton owned the water well and surrounding property. (Tr. of August 17, 2009 hearing, pp. 42, 124, 126, 129).

25. Although AAFCOR certainly understood that investing money without proper due diligence was a risky venture, it nevertheless choose to proceed. (Depo. of David Hirsch, pp. 156-57). Zerbo testified that it would be malpractice for a lawyer such as herself to fail to advise a client of the need to perform a title search prior to lending money based upon representations as to ownership of real property. (Depo. of Donna Zerbo, pp. 48-49).

26. AAFCOR has no document evidencing Kenneth Shelton's right to control or manage SPNW, and, in fact, AAFCOR has no documents signed by Kenneth Shelton. (Depo. of David Hirsch, p. 152). AAFCOR admits it never saw any document substantiating its allegation that Kenneth Shelton ran the debtor's company or any document signed by Kenneth Shelton. (Depo. of David Hirsch, p. 152).

27. AAFCOR has no knowledge of any sharing of profits or commingling of assets between Kenneth Shelton and the debtor. (*Id.*). Mr. Hirsch admits that SPWN was operating at a

loss, and he was interested in making it profitable.  (Depo. of David  Hirsch, p. 144).  Ms. Zerbo admits the debtor's businesses had no money that generated  profits, and that the debtor received no profit from those businesses.  (Depo. of Donna  Zerbo, pp. 489-90).

28.　　Zerbo knew Kenneth Shelton was not an owner or employee of SPNW.  (Depo. of Donna Zerbo, pp. 129-30).

29.　　AAFCOR took ownership positions and seats on the Board for each of the debtor's companies, but  failed  to  produce  any  document  evidencing  that  Kenneth  Shelton managed or controlled any of the debtor's businesses.  (Depo. of David Hirsch,  pp. 161-62).

30.　　Kenneth Shelton and Frank Spires, the debtor's accountant, had never met prior to AAFCOR's  filing of this lawsuit, and Kenneth Shelton has never had any business dealings with Frank  Spires  or  Spires  and  Associates.   (Depo. of Frank Spires, p. 130; Affidavit of Kenneth Shelton, ¶ 15).

31.　　Kenneth Shelton has never had a business relationship with James Pope.  (Depo. of James Pope, p. 169).

32.　　In 1999, Kenneth Shelton bought a piece of property known as Carver  Springs Trout Farm for $125,000.00. He properly recorded the deed in the Lauderdale County Probate Office. (Affidavit of Kenneth Shelton, ¶ 18 and Exhibit 4).  AAFCOR alleges that Timothy Shelton initially

13

entered into a contract to purchase Carver Springs which he then assigned to Kenneth for no consideration. Kenneth Shelton claims that he purchased the property after seeing an advertisement for its sale in the local paper.

33.     AAFCOR wanted to buy water from the Carver Springs property, and attempted to enter into a purchase contract with Kenneth Shelton, which was rejected by Kenneth Shelton. (Depo. of Donna Zerbo, pp. 251-54; Affidavit of Kenneth Shelton, ¶ 21).

34.     Although AAFCOR apparently lent Timothy Shelton approximately $40,000.00 in an attempt to development Carver Springs for the purpose of potentially supplying water to TVBC, AAFCOR had no authorization to expend funds on Kenneth Shelton's behalf. (Depo. of Donna Zerbo, p. 254). Kenneth Shelton allowed AAFCOR to investigate AAFCOR's proposed use of the Carver Springs property, but he expressly refused to share in any expenses. (Affidavit of Kenneth Shelton, ¶ 22).

35.     At some point, Kenneth Shelton, Timothy Shelton, Donna Zerbo and others traveled to Georgia to meet with Fielddale Farms, a potential customer, about developing Carver Springs for the sale of bottled water from TVBC. (Depo. of Kenneth Shelton, p. 43-44). The plan was for Carver Springs, once it was developed, to supply water to TVBC, which would in turn sell bottled water to Fielddale Farms. (Depo. of Kenneth Shelton, p. 206). This deal never materialized and Kenneth Shelton subsequently sold Carver Springs to an independent third party, Cherokee Water, LLC, for $775,000.00, making a profit of $650,000.00. Timothy Shelton introduced the purchaser

14

to Kenneth Shelton.

## CONCLUSIONS OF LAW

### FRAUD CLAIMS

1.	The Court finds that AAFCOR knew prior to lending any money to the debtor that Kenneth Shelton owned the ADEM water well. The fact that AAFCOR knew Kenneth Shelton owned the well was even admitted by counsel for AAFCOR at oral arguments during the summary judgment hearing as well as in plaintiff's pleadings submitted in this case.   The Court further finds that  prior to lending any money to the debtor AAFCOR knew or had reason to believe or suspect that Kenneth Shelton also owned the property surrounding the water well on which the debtor's business sat and knew or had reason to believe that any representation to the contrary was false.  The Court finds that the admission that AAFCOR knew Kenneth Shelton owned the water well, which as the essence and key to AAFCOR's entire investment,  completely negates the reasonable reliance element under Alabama law for fraud and fraudulent suppression, the reasonable reliance standard under § 523(a)(2)(B) of the Bankruptcy Code for false financial statements, as well as the lesser justifiable reliance standard under § 523(a)(2)(A) of the Code for money obtained by fraud.  As set forth more fully below, the Court concludes that AAFCOR was on notice of several factors or red flags giving rise not only to a duty of further inquiry under the reasonable reliance standard, but AAFCOR's reliance upon the truthfulness of any representations that Timothy Shelton owned the Springfield plant property was so utterly unreasonable given the admitted knowledge that Kenneth

15

Shelton owned the water well and other information apparent to plaintiff that AAFCOR cannot even sustain the lesser justifiable reliance standard under § 523(a)(2)(A).

2.     AAFCOR asserts that Kenneth Shelton defrauded AAFCOR by telling plaintiff that his brother owned the Springfield business property. The elements of fraud under Alabama law are: (1) a false representation; (2) of a material existing fact; (3) reasonably relied upon by the plaintiff; (4) who suffered damage as a proximate consequence of the misrepresentation. *See Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources*, 986 So. 2d 1093(Ala. 2007); ALA. CODE § 6-5-101(1975). Fraud, which is never presumed, must be clearly and satisfactorily proven. *Lamb v. Opelika Production Credit Ass'n*, 367 So. 2d 957 (Ala. 1979). Actionable fraud under the Alabama Code requires an affirmative statement or representation. *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288 (11th Cir. 1977).

To survive summary judgment on its fraud claims against this defendant, AAFCOR must, at a minimum, show Kenneth Shelton made an affirmative statement upon which AAFCOR reasonably relied.

3.     Alternatively, AAFCOR argues that Kenneth Shelton is guilty of fraudulent suppression. The elements of a claim of fraudulent suppression are: "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result of acting or of not acting." *Ex parte Household Retail Services Inc.*, 744 So. 2d 871, 879 (Ala. 1999); *Booker v. United American Inc., Co.*, 700 So.2d 1333, 1339 (Ala.

1997). AAFCOR claims that the debtor represented to David Hirsch that the debtor owned the Springfield business property in front of Kennethh Shelton and Kenneth failed to correct the misrepresentation. AAFCOR alleges that it relied upon this representation as to the ownership of the property to lend money to the debtor.

4. Under Alabama law, reasonable reliance is an element required in both misrepresentation and suppression claims. *Hawk v. Roger Watts Ins. Agency*, 989 So. 2d 584 (Ala. Civ. App. 2008); *see Foremost Insurance Co. v. Parham,* 693 So. 2d 409, 422 (Ala. 1997)(a plaintiff must rely reasonably on the alleged misrepresentation); *Lamb v. Opelika Production Credit Ass'n*, 367 So. 2d 957 (Ala. 1979). If a party has reason to doubt the truth of an oral representation or is informed of the truth before he acts, he may not reasonably act or rely on that representation. *Ramsay Health Care, Inc. v. Follmer,* 560 So. 2d 746, 748 (Ala. 1990); *Bedwell Lumber Company v. T & T Corporation,* 386 So. 2d 413 (Ala.1980). "Where one has knowledge of the falsity of a representation <u>or even reason to doubt the truth of a representation, however, reliance is not reasonable</u>." *Patterson v. United Companies Lending Corp.*,4 F. Supp. 2d 1349, 1354 (M.D. Ala. 1998)(emphasis added); *Guillot v. Beltone Electronics Corp.,* 540 So. 2d 648, 649 (Ala. 1988); *Taylor v. Moorman Manufacturing Co.,* 475 So. 2d 1187, 1189 (Ala. 1985); *Bedwell Lumber Co., Inc. v. T & T Corp.,* 386 So. 2d 413, 415 (Ala. 1980).

5. Based upon the foregoing authorities, AAFCOR cannot recover as a matter of law if a reasonably prudent person exercising ordinary care would have discovered the facts, or if the circumstances should have aroused suspicion in the mind of a reasonable person. *Southern Life and Health Ins. Co. v. Smith*, 518 So. 2d 77 (Ala. 1987).

6.      AAFCOR also argues that Timothy Shelton presented a written financial statement to AAFCOR signed on April 5, 2006 which was materially false.   AAFCOR argues that the debtor's false financial statement renders his debt to AAFCOR non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(B).   Alternatively, AAFCOR asserts that the debt is non-dischargeable pursuant to § 523(a)(2)(A) for money obtained by fraud, false pretenses or false representaion.   Section 523(a)(2)(A) and (B) provide that a discharge under § 727 does not discharge a debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> (A) false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or an insider's financial condition;
>
> (B) use of a statement in writing –
>
>> (i) that is materially false;
>>
>> (ii) respecting the debtor's or an insider's financial condition;
>>
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>
>> (iv) that the debtor caused to be made or published with intent to deceive[.]

While reasonable reliance is an element required under § 523(a)(2)(B) for a debt resulting from a false financial statement, the Supreme Court in *Field v. Mans*, 516 U.S. 59 (1995) determined that the applicable standard of reliance that a creditor must establish under § 523(a)(2)(A) is justifiable reliance rather than the more rigid standard of reasonable reliance.  Under § 523(a)(2)(A), AAFCOR must establish that: (1) debtor made a false representation with intent to deceive AAFCOR; (2) AAFCOR  relied on the misrepresentation; (3) the reliance was justified; and (4)

18

AAFCOR sustained a loss as a result of the misrepresentation. In *Vann v. City Bank & Trust Co. (In re Vann)*, 67 F.2d 277 (11th Cir. 1995), the Eleventh Circuit explained that under the justifiable reliance standard the "plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility."

7.     The Court first finds that AAFCOR cannot have reasonably relied upon any representation or omission by Kenneth Shelton as to ownership of the Springfield property, because, by its own admissions, AAFCOR had actual knowledge going into this venture that Kenneth Shelton owned the 65 acres containing the water well and the improvements while the debtor was the sole owner of SPNW. The Court further finds AAFCOR cannot have reasonably relied upon the false financial statement provided by Timothy Shelton which reflected Timothy owned the Springfield plant property, nor any other misrepresentations contained in the financial statement. Moreover, the Court concludes that AAFCOR did not justifiably rely on any oral representations made by Timothy Shelton that he owned the business property. Indeed, there is uncontroverted evidence that at the initial meeting between David Hirsch and Timothy Shelton that it was disclosed that the Springfield property, both the land and well, were owned by Kenneth Shelton.

8.     AAFCOR also possessed copies of the recorded conveyances transferring the subject property from Timothy Shelton to Kenneth Shelton. Because of this knowledge, AAFCOR was on actual notice of a possible falsity either contained in the financial statement which tainted any representations therein, and certainly had "reasonable reason to doubt the truth" of any representation to the contrary as to the ownership of the Springfield property and its failure to prudently investigate such ownership defeats any reasonable reliance argument. Further the Court

19

finds that AAFCOR's reliance on any oral misrepresentations made by Timothy Shelton as to the ownership of the property was not justified under the circumstances of this case. Indeed, the Court finds that the plaintiff's reliance in this case was so utterly unreasonable, in the light of all the information available to AAFCOR, that the law may properly say that its loss is its own responsibility.

9.      The property on which the well was located was the key to the entire water venture. AAFCOR seeks to distinguish the plant property from the well property and argues that while it knew Kenneth Shelton owned the well property it did know he also owned the plant property. However, the adjacent buildings, assembly lines, and other miscellaneous plant property located next to the well were virtually worthless without the well property.[5] Indeed, the pictures of the property merely reflected a rundown looking metal building surrounded by overgrown weeds. What made the business valuable was the well. The well was the essence of AAFCOR's entire investment. Hirsch and Zerbo both admittedly knew that Kenneth Shelton owned the well property. Even though AAFCOR alleges that it thought or understood that the debtor owned the business property or the land with the metal buildings on it located adjacent to the well property, the Court finds that the admitted knowledge that Kenneth Shelton owned the well property would have led AAFCOR to question whether it could take Kenneth's word alone that he would continue to supply water to his brother's business without a written contract and to question the value of the plant property

---

[5]
        While AAFCOR argues that the Springfield plant property alone was worth $5 million dollars and suggests that the objection filed by Kenneth Shelton to the sale of a completely separate water plant for $1.5 million is evidence of same, the Court firmly believes that the property at issue was virtually worthless without the rights to adjacent water well and it is uncontested that AAFCOR knew same was owned by Kenneth Shelton.

20

without a water source.

10.     The reasonable reliance burden is elevated for a sophisticated and educated plaintiff.  *Med Plus Properties v. Colcock Const. Group, Inc.*, 628 So. 2d 370 (Ala. 1993); *Burroughs v. Jackson Nat'l Life Ins. Co.,* 618 So. 2d 1329, 1332. (Ala. 1993). When the plaintiff has the benefit of the advice of experts, such as an attorney, the burden of presenting substantial evidence to establish an issue of fact as to  [reasonable] reliance increases significantly.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.  Kirton*, 719 So. 2d 201 (Ala. 1998).

11.     AAFCOR is comprised of two intelligent, sophisticated, well-educated  individuals with  over  fifty  years  of combined  experience  in  asset  financing  and  purchasing in turn-around situations.  The Court finds as a matter of law that AAFCOR's members, Donna Zerbo and David Hirsch, are sophisticated individuals, educated and  highly experienced in the types of transactions at issue.  Therefore, AAFCOR carries an increased burden when showing reasonable reliance.

12.     "There must ... be some disposition and effort to obtain a knowledge of the  facts, and that is what the law calls reasonable diligence. The question is not simply what facts the complainant actually knew, but of what facts might he have obtained knowledge had he sought it from the natural sources of information which were at his command."  *Batchelor v. Batchelor*, 502 So. 2d 751, 754 (Ala. 1987)(quoting *Taylor v. South &  N.A.R.R.,* 13 F. 152 (M.D. Ala. 1882)).

13.     AAFCOR's fraud allegations rest upon its claims that it relied upon a  representation (the debtor's March, 2006 financial statement) by the debtor that the debtor owned the 65 acres associated with the business assets of SPNW and Kenneth  Shelton's alleged confirmation of that claim.  However, even if it is assumed that  Kenneth Shelton actually made such a representation,

21

AAFCOR admits that prior to advancing any funds it determined Kenneth Shelton owned the ADEM permitted water well and associated real property. The Court finds as a matter of law that these circumstances in themselves should have aroused AAFCOR's suspicions as to the ownership of the property and assets at issue, and any statements alleged to have been made regarding such ownership. Under these circumstances, the Court further finds that AAFCOR had a duty to inquire and investigate and to read the documents discovered in that investigation.

14.     There is a presumption that the plaintiff relied upon its own investigation, and not an alleged misrepresentation, when that plaintiff undertakes to perform its own investigation regarding an alleged misrepresentation. *Burroughs v. Jackson Nat. Life Ins. Co.*, 618 So. 2d 1329 (Ala. 1993). The fact that a plaintiff endeavors to confirm a representation through investigation, and is unwilling to accept the representation without further verification, is strong evidence the plaintiff did not rely upon that representation. *Smith v. J.H. Berry Realty Co.*, 528 So. 2d 314 (Ala. 1988).

15.     The Court further finds that AAFCOR was on actual notice of a possible falsity as to any representation concerning the ownership of the Springfield property (under any definition of that term), and that AAFCOR undertook an investigation to confirm its suspicions, including a search of the Probate records to confirm ownership of the real property and improvements. David Hirsch, AAFCOR's principal, admits that he commenced such investigation, but then incredulously asserts that he was unable to read the documents and, thus, relied upon the debtor's representations as to property ownership.

16.     The reasonable reliance standard for fraud imposes on a plaintiff a general duty to

22

read the documents received in connection with a particular transaction, together with a duty to inquire and investigate. *AmerUS Life Ins. Co. v. Smith*, 5 So. 3d 1200 (Ala. 2008). The plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's alleged oral representations that contradict the written terms in the documents. *Id.* Under the reasonable reliance standard, a judgment as a matter of law in favor of the defendant in a fraud case is appropriate where the party who claims fraud in the transaction was fully capable of reading and understanding the terms of the document involved in the transaction, but instead blindly relies on the defendant's alleged or actual oral representations to the exclusion of written disclosures to the contrary. *Massey Automotive, Inc. v. Norris*, 895 So. 2d 215 (Ala. 2004).

17. The Court finds as a matter of law that AAFCOR, comprised of sophisticated individuals, educated and experienced in the very transactions at issue in this case was certainly capable of reading the recorded documents it possessed, or, at the very least capable of utilizing the expertise of its own attorneys. In light of its knowledge, AAFCOR cannot by law claim to blindly rely upon alleged oral representations to the exclusion of the Probate records themselves.

18. Recordation of a deed operates as constructive notice of the contents of the deed and applies to those whose duty it is to search the records. *Craig v. Craig*, 372 So. 2d 16, 21(Ala. 1979); S*pradling v. May*, 65 So. 2d 494 (Ala. 1953); *Pittman v. Pittman*, 25 So. 2d 26 (Ala. 1945); *Prestwood v. Weissinger*, 945 So. 2d 458, 462 (Ala. Civ. App. 2005); *see also Haines v. Tonning*, 579 So. 2d 1308, 1310 (Ala. 1991)(holding that the proper recording of an instrument relating to an interest in real property constitutes constructive notice "to all the world" of the contents of the

23

instrument).

19.     A plaintiff cannot rely on any representations about the ownership of property to support its action for fraud when it is on constructive notice of the true nature of the title to the property by virtue of the recordation of the property deed. *Gewin v. TCF Asset Mgmt. Corp.*, 668 So. 2d 523 (Ala. 1995); *DeWitt v. Long*, 519 So. 2d 1363 (Ala. Civ. App. 1987); *Stokes v. Bryan*, 154 So. 2d 754 (Ala. App. 1963).

20.     In addition to actual notice, the Court finds that AAFCOR was on constructive notice as to the ownership of the property in question due to the properly recorded land deeds and the properly recorded Federal Land Bank mortgage.

21.     Based upon the foregoing, the Court concludes that AAFCOR did not reasonably rely upon the representations at issue in this case.   A reasonable lender would not have made a loan to a borrower when the water well which supplied the water for the borrower's business was owned by someone else and there was no written agreement to supply the water.   To suggest otherwise is simply beyond belief. The Court further concludes that AAFCOR's reliance upon any representations made by Timothy Shelton was not even justifiable under all the circumstances of this case.

## CONSPIRACY AND PARTNERSHIP CLAIMS

1.     Conspiracy is not a stand-alone tort, and requires an underlying tort.   *Willis v. Parker*, 814 So. 2d 857 (Ala. 2001).   The "plaintiff must allege and prove that  the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed

24

conspiracy." *Cobb v. Union Camp Corp.*, 786 So. 2d 501, 507 (Ala. Civ. App. 2000).

2.     The Court finds that summary judgment on the underlying fraud claim precludes judgment in favor of the plaintiff on the plaintiff's conspiracy claim.

3.     Plaintiff also alleges that Kenneth Shelton and Timothy Shelton were partners. Under the Revised Uniform Partnership Act ("RUPA"), as adopted by the Alabama Legislature, the "association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." ALA. CODE § 10-8A-202. The Official Comment to § 10-8A-202 makes it clear that subjective intent is not to be considered and that persons may create a partnership despite their expressed subjective intention not to do so. Comment No. 1 to § 10-8A-202. Furthermore, under RUPA, the sharing of profits creates a rebuttable presumption that a partnership exists - - regardless of whether there is a written partnership agreement. *See* ALA. CODE § 10-8A-202(c)(3). One can rebut this presumption by demonstrating that the payments were lease payments, payments on a debt, or certain other non-partnership payments. *Id.*

4.     While the Court initially ruled from the bench at the conclusion of the summary judgment hearing that it would render judgment in favor of the defendant, Kenneth Shelton, on AAFCOR's partnership claims, upon further review, the Court will reserve the partnership issue for a further status conference.

In light of the foregoing findings of fact, conclusions of law, and discussion, it is hereby ORDERED, ADJUDGED, and DECREED that summary judgment is GRANTED in favor of Kenneth Shelton on plaintiff's fraud and conspiracy claims and in favor of Timothy Shelton on all

25

claims asserted by AAFCOR.  There being no just cause for delay, and pursuant to Fed. R.  Civ. P.

54 and Fed. R. Bankr. P. 7054, the Court hereby certified this as a final judgment.

      **DONE and ORDERED** this date: November 4, 2009.

/s/   Jack Caddell  
Jack Caddell
United States Bankruptcy Judge
