# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In the Matter of: | }<br>} |
| TIMOTHY D. SHELTON<br>SSN: XXX-XX-8676 | } CASE NO. 07-81534-JAC-7<br>}<br>} CHAPTER 7 |
| Debtor(s). | } |
| AAFCOR, LLC, | } A.P. No. 07-80096-JAC-7<br>} |
| Plaintiff(s), | } |
| v. | }<br>} |
| TIMOTHY SHELTON, FRANK SPIRES,<br>JIM POPE, KENNETH SHELTON,<br>and LAUDERDALE COUNTY<br>TEACHER CREDIT UNION | }<br>}<br>}<br>}<br>} |
| Defendant(s). | } |

## MEMORANDUM OPINION

This matter comes before the Court on the Motion for Summary Judgment filed by defendants Frank Spires and Spires & Associates, P.C. (hereinafter collectively referred to as "Spires") and defendant Jim Pope ("Pope"). After reviewing the submissions of the parties, and hearing oral argument, the Court finds for the reasons below that summary judgment is due to be GRANTED IN FULL in favor of Spires and Pope. There being no just cause for delay, and pursuant to Fed. R. Civ. P. 54 and Fed. R Bankr. P. 7054, the Court hereby certifies this Summary Judgment as Final.

(01063681)

## SUMMARY JUDGMENT STANDARD

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see* e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986). Once a party has properly filed a summary judgment motion, the nonmoving party may not rest upon mere allegations in the pleadings, but must set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322-24. The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

## FINDINGS OF FACT

With respect to plaintiff, AAFCOR's, claims against Spires and Pope, the Court, viewing the evidence in the light most favorable to plaintiff as the nonmovant, makes the following findings of fact:

1. Frank Spires prepared a financial statement for the debtor, Timothy Shelton, based on numbers provided to him by Timothy Shelton. Spires did not attempt to verify, audit or certify the statement based on the explicit understanding that the debtor was not to provide the statement to any third parties. (Depo. of Spires, pp. 23-25, 63-64; Depo. of Timothy Shelton, pp. 137, 148, 336-42; Depo. of Zerbo, pp. 308-09).

2. AAFCOR, LLC is an entity formed specifically for the purpose of collecting money

to be lent to the debtor for his water production and sales venture, Springfield Premium Natural Water, Inc. ("SPNW"). (Depo. of Zerbo, pp. 30, 32, 45, 109-10).

3. AAFCOR's only members are Donna Zerbo and David Hirsch. *(Id.* at 26, 37).

4. Zerbo is a lawyer specializing in tax and securities law, *(id.* at 15-16), who has an LLM in tax law, and is also a certified public accountant, or CPA. *(Id.* at 56, 26567).

5. Zerbo is experienced in handling real estate investments on behalf of clients, structuring loans secured by real property, and auditing the financials of businesses. *(Id.* at 17-21, 82-83, 258).

6. Zerbo is also experienced in securing private investors to fund business opportunities. (Depo. of Hirsch, pp. 43-44, 52, 66, 142-43, 168-69, 213-14).

7. Hirsch is an engineer who previously worked as a rocket scientist for Boeing and NASA. (Depo. of Hirsch, pp. 11-12).

8. For approximately the past four decades Hirsch's primary business has been consulting, in which he travels to various businesses and aids in the restructuring of debt and operations in order to make struggling businesses profitable. *(Id.* at 12-21).

9. In that pursuit Hirsch has also worked on behalf of banks where he would be placed in charge of a company that was in default with the bank and he would turn the business around. *(Id.).*

3

10. Hirsch has also performed similar functions on his own behalf, buying businesses as investment opportunities, turning them around, and then selling them. *(Id.* at 28-36).

11. Pursuant to these activities, Hirsch is experienced in performing due diligence on the operations and finances of businesses. *(Id.).*

12. Prior to investing in any business, Hirsch would fully investigate the operations of the business, and would have his own CPA independently determine the financial condition of the company beyond what was represented by the company. (Id. at 34-35).

13. Defendant Pope introduced AAFCOR to the debtor, Timothy Shelton, on March 27, 2006. (Depo. of James Pope, pp. 62-63). The purpose of the meeting was to discuss funding for one or more of the debtor's business ventures. (*Id.*).

14. Hirsch attended the March 27, 2006 meeting. (Depo. of David Hirsch, pp. 200-01). Uncontroverted testimony shows that it was disclosed at this meeting that the Springfield land and well which was the water source for the debtor's water businesses were owned by the debtor's brother, Kenneth Shelton. (Depo. of Timothy Shelton, p. 122; Depo. of James Pope, p. 177; Affidavit of William York, ¶ 4). At some point before AAFCOR advanced any money to the debtor, Pope provided Hirsch with a partial business plan for the debtor's water business which included some projections, pictures, and part of a business plan summary. At some later point, Hirsch obtained a complete business plan from a bank in Pulaski, Tennessee. One or both of the plans indicated that Timothy Shelton or his company owned the Springfield property. Pope had not seen the completed business plan before AAFCOR filed the subject adversary proceeding. The

4

[131063681]

Case 07-80096-JAC    Doc 434    Filed 11/04/09    Entered 11/04/09 16:32:55    Desc Main
Document    Page 4 of 15

partial business plan was not relied upon by Hirsch. (Depo. of Hirsch, p. 253).

15. Although the facts are hotly disputed as to how AAFCOR obtained the financial statement prepared by Spires, it did come into the possession of AAFCOR before plaintiff loaned over $1,500,000.00 to the debtor. (Id. at 83-84).

16. At the time, Hirsch did not know who prepared the financial statement. *(Id.* at 83-84).

17. Sometime in approximately May of 2006, Hirsch traveled to Alabama to begin performing due diligence on SPNW. (Depo. of Hirsch, pp. 78-79).

18. Hirsch viewed the property, met with Timothy Shelton, met with representatives of the Credit Union that currently held SPNW's debt, and met with banks where new financing was purportedly being sought. *(Id.* at 78-88).

19. Hirsch was provided full access to all of Timothy Shelton's files and had his own key for the SPNW offices. (Depo. of Timothy Shelton, pp. 147, 331-33).

20. At some point during this due diligence, Hirsch met with Spires and discussed the financial statement, which is the only time he discussed the financial statement with Spires. (Depo. of Hirsch, pp. 93-95).

21. Spires made no representations as to the assets or liabilities of Timothy Shelton. *(Id.* at 89).

22. Spires made no representations that the information in the financial statement was

5

accurate. *(Id.* at 109-10).

23. According to Hirsch the sole representation made by Spires was something to the effect that "he had put together the financial statement at Tim's request, but he didn't certify it." *(Id.* at 94-95).

24. Hirsch admitted that he knew that an unaudited financial statement does not carry with it any certification from the accountant that the information contained therein is accurate, and admitted that he knew the subject financial statement was neither audited nor certified. *(Id.* at 1 13-14).

25. Zerbo also testified that the only representation Spires made with respect to the financial statement was that he had put it together. (Depo. of Zerbo, Ex. 4, pp. 118-19).

26. Spires made no representations as to the accuracy of the financial statement, and Zerbo admits that she knew it was not an audited financial statement and that the material numbers were, therefore, not verified by Spires. *(Id.* at 1 19-2.0).

27. AAFCOR at no time informed Spires that it was relying on the financial statement for purposes of extending credit to Timothy Shelton, although it claims that Spires should have known this. *(Id.* at 333-34).

28. The financial statement prepared by Spires listed as an asset of Timothy Shelton 65 acres identified as the Springfield property.

29. AAFCOR admits that it was aware prior to lending any money that the water rights

6

[131063681]

and property containing the well which was SPNW's sole water-source were not owned by Timothy Shelton, but were in fact owned by his brother, Kenneth Shelton. (Depo. of Hirsch, pp. 106-07, 133-34, 154, 220). Counsel for AAFCOR confirmed as much during oral argument:

> MR. BRAZEAL: . . . . Timothy Shelton said at that point, "Look, Mr. Hirsch, over here behind this fence, there is the well, and my brother, Kenneth Shelton, owns the well. He owns all of the property associated with that well, okay . . . .

(Tr. of 8/17/09 Hrg., p. 42).

> MR. BRAZEAL: Judge, the affidavit of Donna Zerbo makes it absolutely clear that she knew that Kenneth owned the well and the property surrounding it, but she didn't know that Kenneth Shelton owned the Springfield business property on which the office and the warehouse, the bottling plant, were located.

*(Id.* at 124).

> THE COURT: And Kenneth owned the land where the well was situated?
>
> MR. CARLE: He owned all of it.
>
> THE COURT: And everybody knew that Kenneth owned it?
>
> MR. CARLE: That's right.
>
> THE COURT: But where the well was?
>
> MR. BRAZEAL: Correct, your honor.

*(Id.* at 126).

> MR. ASHTON: . . . But we are saying that Ken Shelton owned the well. We are conceding that Hirsch knew that at some early point in time. .

7

[131063681]

Case 07-80096-JAC    Doc 434    Filed 11/04/09    Entered 11/04/09 16:32:55    Desc Main
Document    Page 7 of 15

(Id. at 129).

30. The true ownership of the subject property was a matter of public record and was recorded at the Lauderdale County Courthouse, and Hirsch actually procured the deeds but testified that he could not understand them. (Depo. of Pope, pp. 46-47, 138-41, 162-64; Depo. of Timothy Shelton, pp. 286-87; Depo. of Hirsch, pp. 138, 244-46).

31. Hirsch, however, did not take the title documents to any other person, including Zerbo who is a tax lawyer, to help read them. (Depo. of Hirsch, pp. 138, 24446).

32. Hirsch also was in possession of Timothy Shelton's personal and business tax returns, which revealed that no real estate was reported as owned by SPNW. *(Id.* at 333; Depo. of Spires, pp. 55-56).

33. According to AAFCOR, it ultimately loaned approximately $1.5 million dollars to Timothy Shelton using as collateral all of the debtor's assets including the SPNW property.

34. Prior to lending money to Timothy Shelton, AAFCOR did not do a title search to objectively verify that the debtor actually owned the 65-acres listed as SPNW on the financial statement. (Depo. of Zerbo, pp. 319-20).

35. AAFCOR understood that it was a risky investment, but entered into it anyway. (Depo. of Hirsch, pp. 156-57).

# CONCLUSIONS OF LAW

1. The well established elements of fraud are: (1) a false representation; (2) of a material existing fact; (3) reasonably relied upon by the plaintiff; (4) who suffered damage as a proximate consequence of the misrepresentation. *See Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources*, 986 So. 2d 1093(Ala. 2007); ALA. CODE § 6-5-101(1975).

2. "There can be no actionable fraud without a breach of a legal duty owed by the defendant to the plaintiff" and an accountant, such as Spires, only owes such a duty to those who the accountant has a "purpose of reaching and influencing" by his representations. *Colonial Bank of Alabama v. Ridley & Schweigert,* 551 So. 2d 390, 396 (Ala. 1989).

3. Furthermore, any reliance by the plaintiff upon a representation must be reasonable under the circumstances. *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 421 (Ala. 1997); *Torres* v. *State Farm & Casualty Co.,* 438 So. 2d 757, 758-59 (Ala. 1983).

4. The elements of a claim of fraudulent suppression are: "(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result of acting or of not acting." *Ex parte Household Retail Services Inc.,* 744 So. 2d 871, 879 (Ala. 1999); *Booker v. United American Inc., Co.,* 700 So. 2d 1333, 1339 (Ala. 1997).

5. Under Alabama law, reasonable reliance is an element required in both

misrepresentation and suppression claims. *Hawk v. Roger Watts Ins. Agency*, 989 So. 2d 584 (Ala. Civ. App. 2008); *see Foremost Insurance Co. v. Parham,* 693 So. 2d 409, 422 (Ala. 1997)(a plaintiff must rely reasonably on the alleged misrepresentation); *Lamb v. Opelika Production Credit Ass'n*, 367 So. 2d 957 (Ala. 1979).

6. With respect to professional liability for accountants, two of the essential elements under prevailing Alabama law are a duty owed to the plaintiff and the plaintiff's reasonable reliance on the accountant's work. *Boykin v. Arthur Anderson & Co.,* 639 So. 2d 504, 509-10 (Ala. 1994).

7. In order for AAFCOR to survive summary judgment on all of its claims, it is necessary that it present substantial evidence of (1) a duty owed Spires to AAFCOR, and (2) AAFCOR's reasonable reliance on the unaudited financial statement prepared by Spires.

8. Due to the fact that Spires had an express understanding with his client that the unaudited financial statement was not to be provided to any third parties, the Court has reservations as to whether there was any duty owed by Spires to AAFCOR or any other third party. *See Boykin,* 639 So. 2d at 510. However, because the Court finds that there was no reasonable reliance in this case, the Court pretermits further discussion on the duty issue as to Spires. The Court further finds that the conclusion that there was no reasonable reliance in this case, pretermits discussion on the remaining elements of fraud with respect to Pope.

9. With respect to the issue of reasonable reliance, the Alabama Supreme Court explains:

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interests, the right of reliance comes with a

concomitant duty on the part of the plaintiffs to exercise some measure of precaution to safeguard their interests. In order to recover for misrepresentation, the plaintiffs' reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true facts, the plaintiffs should not recover.

*Torres v. State Farm & Casualty Co.,* 438 So. 2d 757, 758-59 (Ala. 1983).

10. What constitutes "reasonable" reliance depends upon "all of the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 421 (Ala. 1997).

11. When the plaintiff has the benefit of the advice of experts, such as an accountant or an attorney, the "burden of presenting substantial evidence to establish an issue of fact as to justifiable [now, reasonable] reliance increases significantly." *Burroughs v. Jackson Nat'l Life Ins. Co.,* 618 So. 2d 1329, 1332. (Ala. 1993)(accountant); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Kirton,* 719 So. 2d 201, 203 (Ala. 1998) (attorney).

12. Furthermore, experience and expertise in transactions similar to the one at issue also raises the burden of showing reasonable reliance. *See Ex parte Ford Motor Credit Co.,* 717 So. 2d 781, 789 (Ala. 1997) (holding that a plaintiff sophisticated "in buying, selling, and financing automobiles" could not reasonably rely on a misrepresentation as to financing rate); *Med Plus Properties v. Colcock Const. Group, Inc.,* 628 So. 2d 370, 378 (Ala. 1993)(holding that "an intelligent, educated person with experience in contracting for the construction of clinic buildings for his partnership" could not reasonably rely on a misrepresentation as to the necessity of obtaining a building permit).

13. The Court finds as a matter of law that AAFCOR had the benefit of expert advice, as one of its principals held an LLM in tax law and was also a CPA. The Court further finds that both of AAFCOR's principals are highly experienced in transactions such as the one at issue. Thus, the Court finds that AAFCOR bears a significantly increased burden of proving reasonable reliance in this case. *Burroughs,* 618 So. 2d at 1332.

14. The Alabama Supreme Court explains that where a party performs his own investigation regarding a representation, there is a presumption that the party relied on his investigation rather than the representation:

> If the representee makes an investigation, however, that is free and unhampered, and he learns the truth, *or conditions are such that he must obtain the information he desires,* or if the facts he seeks to know are as obvious to him as to the representor, and their means of knowledge are equal, he is presumed to rely on his investigation, and not on the representation. In such case he cannot be misled by the representor.

*Burroughs,* 618 So. 2d at 1332 (emphasis added and citation omitted).

15. The Supreme Court has also held that where a party does not take a representation at face value, but rather seeks to confirm that representation through other sources, such weighs against a finding of reliance:

> To claim reliance upon a misrepresentation, the allegedly deceived party must have believed it to be true. If it appears that he was in fact so skeptical as to its truth that he placed no confidence in it, it cannot be viewed as a substantial cause of his conduct.... The undisputed fact that [the plaintiff] was unwilling to accept the statement of [the defendant] without verification is evidence that he did not rely on it.

*Boros v. Baxley,* 621 So. 2d 240, 242-43 (Ala. 1993)(quoting *Smith v. J.H. Berry Realty Co.,* 528 So. 2d 314, 316 (Ala. 1988)).

16. The Court finds that the undisputed facts reveal that AAFCOR did not have reason to believe that the financial statement was true, as both principals knew it was unaudited, uncertified, and Spires made no representation to them that it was accurate, nor did AAFCOR have any reason to believe any representations in the business plan that the debtor or SPNW owned the Springfield property. AAFCOR performed expansive due diligence to confirm each item listed on the statement and business plan. Hirsch even went to the courthouse and procured the documents that should have put him on notice as to the true ownership of the subject property.

17. Hirsch and AAFCOR were at least on constructive notice as to the true ownership of the subject property, as it was a matter of public record:

> In *Stokes v. Bryan,* 42 Ala.App. 120, 154 So. 2d 754 (1963), the plaintiffs purchased real estate from the defendant upon a representation by the defendant that he owned the property outright, when in fact he owned only an undivided interest. The court held that the plaintiffs were on constructive notice of the true nature of title to the property by virtue of the recordation of the deeds. Hence, the plaintiffs could not rely on the representations about ownership of the property to support their action for fraud.

*Batchelor v. Batchelor,* 502 So. 2d 751, 753 (Ala. 1987); *see also Gewin v. TCF Asset Management Corp.,* 668 So. 2d 523, 529 (Ala. 1995) (similarly holding that a claim for fraudulent suppression could not be supported by the alleged failure to disclose a matter of public record).

18. Further, "[w]here one has knowledge of the falsity of a representation or even reason to doubt the truth of a representation . . . reliance is not reasonable." *Patterson v. United Companies Lending Corp.,* 4 F. Supp. 2d 1349, 1354 (M.D. Ala. 1998).

19. If the "circumstances were such that the representation *should have aroused suspicion as to its validity in the mind of a reasonable person,"* or *"if a reasonably prudent person exercising*

15

(BI063681)

Case 07-80096-JAC    Doc 434    Filed 11/04/09    Entered 11/04/09 16:32:55    Desc Main
Document      Page 13 of 15

*ordinary care should have* discovered the facts, the plaintiff [is] not allowed to recover, as a matter of law." *Southern Life and Health Ins., Co.* v. *Smith,* 518 So. 2d 77, 79 (Ala. 1987) (emphasis added).

20. The Court finds as a matter of law that the circumstances were such that AAFCOR should have had suspicion as to the accuracy of the unaudited financial statement and the business plans. AAFCOR knew the statement was unaudited and not certified to be accurate. The statement and business plans listed as an asset of Tim Shelton 65 acres identified as the Springfield property. However, AAFCOR discovered early on that the well and the water were not owned by Tim Shelton, but by his brother, Kenneth Shelton. AAFCOR was in possession of Tim Shelton's personal and business tax returns which listed no real estate as owned by SPNW.

21. The Court further finds that these and other facts should have, and in fact did, prompt AAFCOR to investigate further into the true ownership of the property. Hirsch went to the courthouse and procured all of the documents reflecting the ownership of the property. AAFCOR's contention that Hirsch could not understand the documents does not negate the fact that the documents which would have confirmed the true ownership of the subject property were in AAFCOR's possession. AAFCOR also failed to perform a title search on the real property which was to serve as collateral for loans totaling approximately $1.5 million dollars to Timothy Shelton. AAFCOR argued during oral argument that it relied on other inaccuracies in the financial statement in addition to the ownership of the subject property. The Court finds, however, that if it could not have reasonably relied on the statement as to the SPNW property, such makes reliance on any other part of the statement unreasonable as a matter of law. *Patterson,* 4 F. Supp. 2d at 1354 ("[w]here one has knowledge of the falsity of a representation or even reason to doubt the truth of a representation .

15

(BI063681)

. .reliance is not reasonable.").

23. In light of the sophistication of AAFCOR in business transactions of this kind, the Court finds as a matter of law that AAFCOR has failed to meet its significantly increased burden of presenting substantial evidence that it reasonably relied on the unaudited financial statement prepared by Spires and any business plan provided by Pope.

24. Because reasonable reliance is an essential element of all of AAFCOR's claims against Spires and Pope, both defendants are entitled to summary judgment in full. Summary judgment on the underlying claims also precludes the conspiracy count. *Willis v. Parker,* 814 So. 2d 857, 867 (Ala. 2001) ("A conspiracy cannot exist in the absence of an underlying tort."). The "plaintiff must allege and prove that the claimed conspirators had actual knowledge of, and the intent to bring about, the object of the claimed conspiracy." *Cobb v. Union Camp Corp.*, 786 So. 2d 501, 507 (Ala. Civ. App. 2000).

Based on the foregoing discussion, the Court finds that there are no genuine issues of material fact and that Frank Spires, Spires & Associates, P.C., and Jim Pope are, therefore, entitled to judgment as a matter of law. It is hereby ORDERED, ADJUDGED and DECREED that summary judgment is GRANTED in favor of Frank Spires, Spires & Associates, P.C., and Jim Pope and that plaintiff's amended complaint is due to be dismissed as to these defendants, with prejudice. Costs are to be taxed as paid. There being no just cause for delay, and pursuant to Fed. Civ. P. 54 and Fed. R. Bankr. P. 7054, the Court hereby certifies this summary judgment as final.

DONE this 4th day of November, 2009.

/S/ Jack Caddell
Jack Caddell
United States Bankruptcy Judge